UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Raymond James & Associates, Inc.,

       Plaintiff,

v.                                                              Case No.
                                                                Hon.
Pietro Melia,

       Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiff Raymond James & Associates, Inc. ("Raymond James"), by and through its counsel, Honigman LLP, and for its Verified Complaint against Defendant Pietro "Peter" Melia, state as follows:

## NATURE OF THE ACTION

1.  Raymond James seeks return of a company-issued laptop and company files that no one—including Mr. Melia—disputes belong to Raymond James. Yet despite months of back and forth, Mr. Melia has so far refused to return Raymond James' property.

2.  The laptop was a company-issued device that Mr. Melia's deceased wife, Sarah Melia, used in the course of her employment as a financial advisor with Raymond James. Mrs. Melia agreed that the Raymond James laptop belonged to the company and not to her. She also agreed that if her employment with Raymond

James were to cease for any reason, including her death or disability, the laptop would be returned.

3.     Mrs. Melia died suddenly in March 2025.   In the months since Mrs. Melia's unexpected death, Mr. Melia has retained the laptop, and potentially Raymond James files.  He refuses to give anything back unless Raymond James meets certain conditions, including signing an agreement containing a "hold harmless" provision.   Mr. Melia has no right to the laptop or other company information, let alone to condition their return.

4.     Raymond James is sympathetic to the Melia family's personal tragedy, but Raymond James cannot allow Mr. Melia to continue unlawfully retaining Raymond James' laptop and any other company information.

5.     The laptop contains Raymond James' proprietary and confidential information.  Its return is imperative to maintain the integrity of those invaluable assets.  Despite Raymond James' best efforts to obtain the laptop and other company information in Mr. Melia's possession without judicial intervention, Mr. Melia has forced its hand.

6.     Recently, Mr. Melia sent letters to several Raymond James clients, some of whom Mrs. Melia worked with and some of whom she did not.  At least one letter was sent to someone that was not a Raymond James client, but whom Mrs. Melia and her Raymond James business partner, Christopher Marchand, had in

2

their shared "contacts list." And strangely, some of the letters were addressed to Raymond James clients who had passed away. The letters sought to solicit clients to do business with another financial advisory firm.

7.    Several of these letter recipients contacted Raymond James and expressed concern about how Mr. Melia obtained their contact information.

8.    Upon information and belief, Mr. Melia identified the names and contact information of clients from Raymond James' confidential information.

9.    Raymond James thus seeks relief from the Court mandating that Mr. Melia return Raymond James' property, including the laptop and company information Mrs. Melia may have retained related to her Raymond James employment. Raymond James faces the threat of serious, irreparable injury, including reputational harm, if Mr. Melia continues to possess Raymond James' laptop and company files. The harm will be all the more egregious if Mr. Melia continues to leverage company information to solicit clients on behalf of another firm.

## PARTIES, JURISDICTION, AND VENUE

10.    Plaintiff Raymond James is a citizen of Florida. It is incorporated under the laws of the State of Florida and has its principal place of business in St. Petersburg, Florida.

11.     Defendant Pietro "Peter" Melia is a citizen of Michigan and resides in Macomb County, Michigan.

12.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a).

13.     Raymond James, as a citizen of Florida, and Mr. Melia, as a citizen of Michigan, are citizens of different states under 28 U.S.C. § 1332(a)(1).

14.     The amount in controversy of this dispute, exclusive of interest and costs, exceeds $75,000 under 28 U.S.C. § 1332(a)(2).  The confidential and proprietary information on Mrs. Melia's laptop and in company documents she maintained is highly valuable.  At the time of her passing, the book of business that Mrs. Melia serviced along with Mr. Marchand totaled $332 million and had a trailing 12-month production of approximately $2 million.  Upon information and belief, Mr. Melia has used certain of that information, like client lists.  He has deployed that information to solicit Raymond James customers on behalf of another entity, with the potential to solicit millions of dollars of assets to leave Raymond James.  In the week since Mr. Melia sent his letters to Raymond James clients, clients representing over $100,000 in assets have stated an intent to leave the firm.  The value of what Raymond James seeks to protect—its confidential information and its clients—thus exceeds $75,000.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claim occurred in this judicial district and the defendant, Mr. Melia, resides in this judicial district.

## FACTUAL ALLEGATIONS

### *Sarah Melia's Employment at Raymond James*

16.     Raymond James is one of the country's premier full-service investment firms.  To support its clients, Raymond James employs a range of financial advisor professionals to service client accounts.

17.     Raymond James has in place various policies, procedures, and agreements governing a financial advisor's employment with the firm, as well as an advisor's use of Raymond James-issued assets.

18.     Many of Raymond James' policies and procedures are designed to protect company and client information, define company property, and establish Raymond James' right to access its professionals' computers and documents— ensuring compliance with applicable state and federal laws and regulations.

19.     Sarah Melia was employed as a Raymond James advisor for over a decade, from January 2012 to March 2025.  In the course of her employment at Raymond James, she was issued a Raymond James laptop.  The laptop is a Hewlett-Packard HP EliteBook 845 G7 Notebook PC with an asset tag number of 220818. Its serial number is 5CG112942W.

20. Mrs. Melia also signed agreements as a Raymond James employee. For instance, on January 3, 2012, she signed an acknowledgment that she would comply with Raymond James' policies, including the policies set forth in its Associate Handbook (the "Handbook"). (**Exhibit 1**, Certification of Review.)

21. Among other things, the Handbook provided that employees had no expectation of privacy with respect to information stored on any company-issued device, including company-issued laptops:

> The company must retain the right and ability to enforce [its] policy and to monitor compliance with its terms. While computers and other electronic devices are made accessible to Associates to assist them to perform their jobs and to promote the company's interests, ***all such computers and electronic devices***, whether used entirely or partially on the company's premises or with the aid of company equipment or resources, ***must remain fully accessible to the company*** and, to the maximum extent permitted by law, ***will remain the sole and exclusive property of the company***. ***By your acknowledgment of this Associate Handbook, you consent to electronic monitoring by Raymond James as described in this Handbook.***
>
> ***Associates should not maintain any expectation of privacy with respect to information transmitted over, received by, or stored in any electronic communications device owned, leased, or operated in whole or in part by or on behalf of the company.***

(**Exhibit 2**, Associate Handbook Excerpts (emphasis added and emphasis in original).)

22. Such policies governing company-issued technology are commonplace in the financial services industry.

6

23.    Mrs. Melia was also required to complete annual ethics courses and pass corresponding tests to demonstrate her understanding of Raymond James' ethical standards.  She received certificates confirming that she achieved a perfect score on these assessments.  (**Exhibit 3**, Training Completion Certificates.)

24.    These ethics courses went over various topics, including the use of Raymond James assets.  The training states: "[t]he use of company assets outside of your company responsibilities – such as using your company work product in an outside venture or using company materials or equipment to support your personal interests – requires prior written approval from your manager." (**Exhibit 4**, 2023 Upholding an Ethical Culture Excerpts at 3.6.)

25.    The ethics courses also discussed sharing confidential information, which includes "client data" and states that a Raymond James employee "must only share confidential information with colleagues on a need-to-know basis and in conformity with all applicable laws and regulations."  (**Exhibit 4**, 2023 Upholding an Ethical Culture excerpts at 4.5.)

26.    Mrs. Melia was subject to these terms through her entire employment with Raymond James.

### *Mrs. Melia and Mr. Christopher Marchand Create the Marchand/Melia Advisory Group*

27.    In 2022, Mrs. Melia joined forces with Christopher Marchand to form the Marchand/Melia Advisory Group of Raymond James.  They were based out of

Raymond James' Clinton Township, Michigan, office. Prior to creating the Marchand/Melia Advisory Group, Mrs. Melia, Mr. Marchand, and Mr. Marchand's father, Jim Marchand, worked together as part of the Marchand Advisory Group.

28. As the Marchand/Melia Advisory Group, Mrs. Melia and Mr. Marchand serviced clients as a team and split all revenue between the two of them. As is natural, some clients communicated more with Mrs. Melia, and others with Mr. Marchand.

29. As of March 2025, the total assets that the Marchand/Melia Group managed totaled $332 million and had a trailing 12-month production of approximately $2 million.

***Mrs. Melia Suddenly Passes Away***

30. On March 6, 2025, Mrs. Melia unexpectedly passed away.

31. At the time of Mrs. Melia's death, she was in possession of Raymond James' property, including a company-issued laptop.

32. Raymond James contacted her husband, Mr. Melia, to secure the return of the laptop and any company information Mrs. Melia may have had.

33. Mr. Melia refused to return anything. Through counsel, Mr. Melia stated that while he was aware that the laptop was Raymond James' property, there ***might*** be attorney-client privileged information on the laptop, and Mr. Melia did not want to waive any purported privilege by returning the device.

34.     Raymond James reiterated that there was no expectation of privacy on a company-issued laptop, that Michigan law agreed, and that the laptop needed to be returned immediately to Raymond James to protect the integrity of the proprietary and confidential information on it.

35.     Despite many back-and-forth communications regarding the return of the laptop and any other company information, Mr. Melia ultimately went silent in late August.

### *Mr. Melia Wrongfully Uses Raymond James Information to Send Letters to Raymond James' Clients*

36.     On August 28, Raymond James started receiving complaints from its clients that they had received letters from Mr. Melia.  (*See* **Exhibit 5,** Christopher Marchand Declaration.)

37.     The letter was an open solicitation of Raymond James' clients to leave Raymond James for another firm.  Mr. Melia wrote:

> As many of you already know, my wife Sarah Melia passed away on March 6, 2025.  Sarah was deeply committed to serving you and all her clients with the highest level of care, integrity, and dedication.  She valued the trust you placed in her and spoke often of how important her clients were to her.
>
> While I am not a licensed financial advisor, it is important to me that you continue to receive the same thoughtful guidance and attention that Sarah provided.  After careful consideration, I would like to introduce you to Wealthcare Management Services, a team that shares Sarah's values and commitment to client service.

38.     The letters go on to describe Wealthcare Management Services and to provide contact information for the firm.

39.     Upon information and belief, Mr. Melia obtained client names and contact information by improperly accessing confidential information through either Mrs. Melia's Raymond James-issued laptop or company files.

40.     Indeed, Raymond James completed a preliminary remote forensic analysis of Mrs. Melia's laptop and found that it had at least been powered on from August 8-13, which was approximately two weeks before the letters were sent.

41.     On September 3, Raymond James sent a letter instructing Mr. Melia to cease and desist from sending any other communications to Raymond James customers, identify everyone he sent letters to, and immediately return Mrs. Melia's Raymond James-issued laptop and other company information to Raymond James. (**Exhibit 6**, Cease and Desist Letter.)

42.     Through counsel, Mr. Melia responded the next day that he did not access any confidential information, and that letter recipients were identified through conversations with Mrs. Melia's friends and family.  (**Exhibit 7**, Response to Cease and Desist Letter.)

43.     This justification does not explain why many of the letter recipients were in fact customers that Mr. Marchand worked with and with whom Mrs. Melia had little to no contact.  Nor does it explain why a letter was sent to Mr. Marchand's

dead grandfather, to his aunt who did not work with Mrs. Melia, or to anyone who was not a Raymond James customer but was in Mr. Marchand and Mrs. Melia's business contacts.  (**Exhibit 8**, Declaration of Denise Lowe; see also **Exhibit 5**.).  Simply put, Mrs. Melia's family and friends would not have contact information for Mr. Marchand's family and business contacts.

44.    Mr. Melia also again expressed that he would not return the laptop because it ***might*** contain privileged information.

45.    Raymond James confirmed in writing that it would not consider tender of the laptop a waiver of privilege over any purportedly privileged information that Mrs. Melia stored on the laptop (even though Raymond James' policies expressly stated that employees have no expectation of privacy with respect to the information on the laptop).  Raymond James demanded that the laptop and company files be returned to its outside counsel's Bloomfield Hills office by Friday, September 5 at 5 p.m.  (**Exhibit 9**, Email Thread.)

46.    Neither the laptop nor any company files were returned.

## COUNT I (CLAIM AND DELIVERY)

47.    Raymond James incorporates the foregoing allegations as if fully restated herein.

48.    Under Michigan law, including MCL 600.2920 and MCR 3.105, Raymond James is entitled to immediate possession of the Raymond James laptop

11

issued to Sarah Melia as well as company files that Mrs. Melia may have maintained (the "Raymond James Property").

49.     The Raymond James Property is in Mr. Melia's possession or control.

50.     The Raymond James Property consists of independent pieces of tangible personal property.

51.     Raymond James has the right to control the Raymond James Property.

52.     Mr. Melia does not have any legal interest in the Raymond James Property.

53.     Raymond James is entitled to immediate possession of the Raymond James Property.

54.     Raymond James has demanded that Mr. Melia surrender possession of the Raymond James Property to Raymond James.

55.     Mr. Melia has not surrendered possession of the Raymond James Property to Raymond James.  In fact, he has refused to surrender possession of the Raymond James Property to Raymond James.

56.     Mr. Melia's refusal to immediately return the Raymond James Property to Raymond James substantially impairs the value of the Raymond James Property and exposes Raymond James to significant and irreparable harm through the misuse of the Raymond James Property.

57.     Raymond James requests an injunction and entry of an order compelling Mr. Melia to return the Raymond James Property to Raymond James and to cease misusing it.

## COUNT II (COMMON LAW CONVERSION)

58.     Raymond James incorporates the foregoing allegations as if fully restated herein.

59.     The Raymond James Property is Raymond James' personal property.

60.     Mr. Melia has physical possession of and dominion over the Raymond James Property.

61.     Mr. Melia is not entitled to possess the Raymond James Property.  The laptop was a company-issued device provided to Mr. Melia's deceased wife in the course of her employment with Raymond James and at all times remained Raymond James' property.   Any files that Mrs. Melia maintained in the course of her employment containing Raymond James company information are likewise the property of Raymond James.

62.     Mr. Melia has no right to continued possession or use of the Raymond James Property.

63.     Nevertheless, and without any legal right or entitlement to do so, Mr. Melia has continued to possess the Raymond James Property.

64.     Mr. Melia has converted Raymond James' Property in denial of and inconsistent with Raymond James' rights in the Raymond James Property.

65.     If the Raymond James Property is not returned, Raymond James will suffer significant damages as a result of the conversion of its property, including irreparable harm.

66.     Raymond James is entitled to injunctive relief requiring Mr. Melia to return the Raymond James Property.

## COUNT III (STATUTORY CONVERSION UNDER MCL 600.2919(A))

67.     Raymond James incorporates the foregoing allegations as if fully restated herein.

68.     The Raymond James Property is Raymond James' personal property.

69.     Mr. Melia has physical possession of and dominion over the Raymond James Property.

70.     Mr. Melia is not entitled to possess the Raymond James Property.  The laptop was a company-issued device provided to Mr. Melia's deceased wife in the course of her employment with Raymond James and at all times remained Raymond James property.   Any files that Mrs. Melia maintained in the course of her employment containing Raymond James company information are likewise the property of Raymond James.

71.     Mr. Melia has no right to continued possession or use of the Raymond James Property.

72.     Nevertheless, and without any legal right or entitlement to do so, Mr. Melia has continued to use the Raymond James Property.

73.     Mr. Melia has converted Raymond James' property in denial of and inconsistent with Raymond James' rights in the Raymond James Property in violation of MCL 600.2919(a).

74.     Upon information and belief, Mr. Melia's conversion is for his own use, to contact clients of Raymond James to have them switch financial advising firms.

75.     Raymond James is entitled to injunctive relief barring further possession and misuse of its property by Mr. Melia.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Raymond James respectfully requests that the Court award it the following relief:

1.      Enter judgment in favor of Raymond James and against Mr. Melia finding that Raymond James is entitled to immediate possession of the Raymond James laptop and any other company documents in Mr. Melia's possession;

2.      Order the immediate return of the Raymond James laptop and any other company documents to Raymond James;

3.    Order that Mr. Melia cease from using Raymond James confidential and propriety information to contact Raymond James clients, and provide Raymond James a list of clients he contacted;

4.    Award Raymond James its costs and attorneys' fees incurred in connection with this action; and

5.    Award all other legal or equitable relief that is just and proper.

Respectfully submitted,

HONIGMAN LLP
Attorneys for Plaintiff


By: /s/ Rian C. Dawson
Rian C. Dawson (P81187)
Yafeez S. Fatabhoy (P83064)
Honigman LLP
660 Woodward Avenue, Suite 2290
Detroit, MI 48226-3506
313-465-7000
rdawson@honigman.com
yfatabhoy@honigman.com

Dated:  September 9, 2025

## <u>VERIFICATION</u>

I, Dominic Prioli, a Senior Vice President and Regional Director at Raymond James & Associates, Inc., declare that I have reviewed the allegations set forth in the Verified Complaint and have authorized the filing of this Verified Complaint. I further declare under penalty of perjury that all of the allegations made in the foregoing Verified Complaint of which I have personal knowledge are true and correct, and that all allegations of which I do not have personal knowledge I believe to be true and correct based on information received from my employees.

Dated: September 9, 2025

_____
Dominic Prioli